UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

A17 CR 227 SS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CRIMINAL NO. |
| | § | |
| Plaintiff, | § | **18 USC § 1349**  Conspiracy to Commit |
| | § | Health Care Fraud, |
| v. | § | **18 USC § 1347, and 18 USC § 2** |
| | § | Health Care Fraud, and Aiding and Abetting, |
| **WILLIAM JOSEPH DUBIN, PhD,** | § | **18 USC § 371**  Conspiracy to violate |
| **DAVID FOX DUBIN, PhD, and** | § | 42 U.S.C. § 1320a–7b (b)(1) and (2) |
| **GLEN ELWOOD McKENZIE, JR.** | § | **42 USC § 1320a–7b (b)(1) and (2)** |
| | § | Soliciting or receiving illegal remuneration, |
| | § | and paying or offering to pay illegal |
| | § | remuneration. |
| Defendants. | § | **18 USC § 1028A and 18 USC § 2** |
| | § | Aggravated Identity Theft, and |
| | § | Aiding and Abetting |
| | § | **18 USC § 981 and 18 USC § 982**  Forfeiture |

## INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Indictment:

## INTRODUCTION

### THE PRACTICE OF PSYCHOLOGY IN TEXAS

1.      The practice of psychology in the State of Texas was regulated and governed by

provisions in the Texas Occupations Code, which were known as the Psychologists' Licensing

Act; and by the rules and regulations of the Texas State Board of Examiners of Psychologists,

(which was commonly known as and hereinafter referred to as the TSBEP). No person was

permitted to engage in the practice of psychology unless she or he held a license issued by the

TSBEP or was otherwise permitted to do so by law. Practicing psychology in violation of the

Psychologists' Licensing Act was a crime. Each day a violation occurred was a separate criminal offense.

2.        The Psychologists' Licensing Act permitted the TSBEP to issue (1) Psychologist licenses; (2) Provisional licenses; and (3) Psychological Associate licenses. A person holding a provisional license was commonly referred to as a Provisionally Licensed Psychologist or PLP. A person holding a psychological associate license was commonly referred to as a Licensed Psychological Associate or LPA.

3.        The TSBEP rules specified that: "Licensed psychological associates and provisionally licensed psychologists must be under the supervision of a licensed psychologist and may not engage in independent practice." The rules also provided that, "A licensee is responsible for the professional supervision of all individuals that the licensee employs or utilizes to provide psychological services of any kind."

## WILLIAM DUBIN, PhD AND PSYCHOLOGICAL A.R.T.S., P.C.

4.        **WILLIAM JOSEPH DUBIN** was a psychologist, licensed by the TSBEP to practice psychology and to provide psychological services in the State of Texas.

5.        On or about December 3, 1996, **WILLIAM JOSEPH DUBIN,** and another person (unindicted herein) formed a Texas professional corporation for the purpose of engaging in and carrying on the practice of psychology in the State of Texas, as permitted by the laws of the State of Texas. The legal name of the corporation was Psychological A.R.T.S., P.C. but it was commonly known as P.A.R.T.S or simply PARTS. (The corporation will be referred to herein as PARTS.) From the inception of PARTS, **WILLIAM JOSEPH DUBIN** served as an officer and as a director and exercised control over, and had responsibility for the actions and

2

activities of PARTS, and for the employees, agents, and others who acted for him, and for or on behalf of PARTS. PARTS had a "Testing Office Location" at 7801 North Lamar Blvd. Suite B-169, Austin, Texas, and a "Therapy Office Location" as 4131 Spicewood Springs Rd. Suite E-2, Austin Texas.

6.      Article XIV of the Articles of Incorporation of PARTS provided, "The professional services of the Corporation shall be rendered only through officers, employees, and agents who were duly licensed or otherwise legally authorized to practice psychology within the State of Texas."

## DAVID FOX DUBIN, PhD

7.      **DAVID FOX DUBIN,** the son of **WILLIAM JOSEPH DUBIN,** earned a PhD in 2011. **DAVID FOX DUBIN** began working for PARTS on or about June 12, 2012, and began to manage the company. In or around June of 2012, **DAVID FOX DUBIN** held himself out as a "Managing Consultant" of PARTS. In or around December of 2012, **DAVID FOX DUBIN** held himself out as the "Operation Manager" of PARTS. In or around July 2013, **DAVID FOX DUBIN** held himself out as the "Business Manager" of PARTS. On or about December 1, 2013, **DAVID FOX DUBIN** became the president of PARTS.

8.      On or about November 12, 2012, **DAVID FOX DUBIN** became an LPA; on or about April 10, 2013 he became a PLP; and on or about September 11, 2013 he became a licensed psychologist.

9.      Beginning in or around June of 2012, **DAVID FOX DUBIN,** in addition to **WILLIAM JOSEPH DUBIN,** also exercised control over, and had responsibility for the actions

3

and activities of PARTS and its employees, agents, and others who acted for them and for or on behalf of PARTS.

## GLEN McKENZIE, AND THE EMERGENCY CHILDREN SHELTERS

10.     **GLEN ELWOOD McKENZIE, JR.** was the President of the Board of Directors of an emergency shelter house for children and youth, which was located in the Western District of Texas, approximately eighty miles from Austin, Texas.

11.     The emergency shelter house described in paragraph 10 was a 32-bed assessment center/shelter licensed by the Texas Department of Family and Protective Services to provide temporary 90-day shelter for crisis intervention and mental health services to children and youth ages 5 to 17 who were awaiting more permanent placement in other homes. The Texas Department of Family and Protective Services placed children and youth from all regions of Texas at the emergency shelter house described in paragraph 10.

12.     The mission of the emergency shelter house described in paragraph 10 was to focus on the value of the children and youth and how to help them move forward from the crisis. In keeping with its mission, said emergency shelter house arranged for comprehensive mental health assessments to be completed for each child and youth in order to make informed decisions regarding their needs. The comprehensive mental health assessments included the administration of various psychological tests. Psychological testing of the children and youth placed in said emergency shelter house was done at the shelter house.

13.     In addition to the emergency shelter house described in paragraph 10, **GLEN ELWOOD McKENZIE, JR.** had contacts at other entities and facilities that provided shelter or other services to Texas children and youth with needs similar to those of the children and youth

4

who were placed at the emergency shelter house described in paragraph 10. Children and youth at those other entities and facilities also often needed comprehensive mental health assessments including various psychological testing.

14.     Many of the children and youth at the emergency shelter house described in paragraph 10, and at the other entities and facilities described in paragraph 13, were recipients of, or otherwise had health care insurance coverage through, the health care benefit program known as the Texas Medical Assistance Program, commonly referred to as the Texas Medicaid program, or simply as Medicaid. Every child and youth who was a Medicaid recipient was assigned a unique, government issued, identification number as a means of identification on insurance billings to Medicaid.

## MEDICAID

15.     The Texas Medical Assistance Program (hereinafter referred to as Medicaid) was created on or about September 1, 1967 under the provisions of, and subject to, Title XIX of the federal Social Security Act, and Chapter 32 of the Texas Human Resources Code. Through its various plans and programs, the Medicaid program was a plan or program, or network of plans and programs, which through insurance or otherwise, provided health care benefits to persons who had limited income. Medicaid was funded in part by the State of Texas, and in part by the United States Government. Medicaid was both a "State health care program" as defined in 42 United States Code § 1320a–7 (h) and a "Federal health care program" as defined in 42 United States Code § 1320a–7b (f). Medicaid was also a health care benefit program as defined in Title 18, United States Code, § 24(b).

16.      Medicaid included traditional Medicaid fee for service plans; the Children's Health Insurance Program (CHIP); and managed health plans, such as those offered by Superior HealthPlan and its affiliate Cenpatico.

17.      Medicaid provided a full-range of covered medical and behavioral health services for eligible children and youth in Texas, including the children and youth at the emergency shelter house described in paragraph 10, and at the other entities and facilities described in paragraph 13. Medicaid generally paid the cost of the comprehensive mental health assessments and testing of the children and youth at the emergency shelter house described in paragraph 10, and at the other entities and facilities described in paragraph 13.

18.      While enrollment as a Medicaid provider was voluntary, it required the person seeking enrollment to submit an application for enrollment, then sign a written agreement to know, and follow, all of the laws rules and regulations of the Medicaid program.

19.      **WILLIAM JOSEPH DUBIN**, enrolled himself personally as a Medicaid provider. PARTS was also enrolled as a Medicaid provider.

## NATIONAL PROVIDER IDENTIFIER (NPI)

20.      A National Provider Identifier (NPI) was a unique government issued identification number assigned to providers of health care items and services. The NPI was a 10-digit number assigned randomly by the National Plan and Provider Enumeration System (NPPES), which was developed by the federal government through the Centers for Medicare and Medicaid Services (CMS).

21.      The purpose of the National Provider Identifier (NPI) was to improve the efficiency and effectiveness of the electronic transmission of health information by health care

6

providers. A health care provider used her or his unique assigned NPI number to identify herself or himself in standard transactions, such as health care claims to Medicaid, as the person who provided the health care services billed.

22.     **WILLIAM JOSEPH DUBIN** and **DAVID FOX DUBIN** were both health care providers. Both applied for and were assigned their own individual and unique NPI number.

## THE MEDICAID RULES FOR BILLING PSYCHOLOGICAL TESTING SERVICES

23.     Psychological services, including psychological testing were Medicaid-covered benefits, but **only** if the provider met certain required conditions, and otherwise fully complied with all of the Medicaid rules.

### A. Testing Administered By A Licensed Psychologist

24.     The rules of the Medicaid program provided that a psychologist who was licensed by the TSBEP, and who was enrolled as a Medicaid provider, was authorized to administer and bill Medicaid for psychological testing. Bills to Medicaid for psychological testing administered by a licensed psychologist were supposed to contain the billing code modifier "AH" which designated that the psychological testing services were provided by the licensed psychologist.

### B. Testing Administered By A Licensed Psychological Associate (LPA)

25.     The rules of the Medicaid program provided that a psychologist who was licensed by the TSBEP, and who was enrolled as a Medicaid provider, was authorized to bill Medicaid for psychological testing administered by a Licensed Psychological Associate (LPA), but **only** if all of the following conditions were met:

a.     The LPA had to have been licensed by the TSBEP.

b.   The LPA had to have been an employee of either the licensed psychologist or the legal entity that employed the licensed psychologist.

c.   The psychological testing services of the LPA had to have been "performed under the direct supervision of a licensed, Medicaid-enrolled psychologist."

d.   "Direct supervision" meant, and required, that the supervising psychologist had to have been in the same office, building, or facility when and where the psychological testing was being conducted, and the supervising psychologist had to have been immediately available to furnish assistance and direction to the LPA.

e.   Bills to Medicaid for psychological testing administered by an LPA were supposed to contain the billing code modifier "UC" which designated that the psychological testing services had been provided by an LPA. (Bills for psychological testing administered by an LPA were paid at 70% of the amount that would have been paid if the psychological testing had been administered by a licensed psychologist.)

## C. Testing Administered By Students, Interns, and Others

26.   The rules of the Medicaid program expressly and unequivocally prohibited billing Medicaid for any psychological testing administered by a student or an intern.

27.   The rules of the Medicaid program expressly, and unequivocally prohibited billing Medicaid for any psychological testing administered by a licensed professional unless that person was licensed by the TSBEP as an LPA (or as a psychologist). The Medicaid rules expressly stated, "Psychologists must not bill for services performed by students, interns, or licensed professionals under their supervision except for services provided by LPAs."

## D. Testing Administered By A Provisionally Licensed Psychologist (PLP)

28.   Beginning in or around December 2013, the Medicaid rules were amended to allow a psychologist who was licensed by the TSBEP, and who was enrolled as a Medicaid

8

provider, to bill Medicaid for psychological testing administered by a Provisionally Licensed Psychologist (PLP), but **only** if all of the following conditions were met:

a.  The PLP had to have been licensed by the TSBEP.

b.  The PLP had to have been an employee of either the licensed psychologist or the legal entity that employed the licensed psychologist.

c.  The psychological testing services of the PLP had to have been "performed under the direct supervision of a licensed psychologist in accordance with the Texas State Board of Examiners of Psychologists (TSBEP) guidelines."

d.  "Direct supervision" meant, and required, that the supervising psychologist had to be in the same office, building, or facility when and where the psychological testing was being conducted, and the supervising psychologist had to have been immediately available to furnish assistance and direction to the PLP.

e.  Bills to Medicaid for psychological testing administered by a PLP were supposed to contain the billing code modifier "U9" which designated that the psychological testing services were provided by a PLP. (Bills for psychological testing administered by a PLP were paid at 70% of the amount that would have been paid if the psychological testing had been administered by a licensed psychologist.)

29.  The Medicaid rules just stated in paragraphs 24 through 28 were not limited to psychological testing but were also applicable to other psychological and behavioral health services.

## VOCATIONAL REHABILITATION SERVICES PROGRAM

30.  The Texas Vocational Rehabilitation Services program (hereinafter referred to as the Texas VR program) provided services to Texas youth and students who had behavioral and or mental health problems. Medical care including, psychological and vocational assessments

were among the many services available through the Texas VR program to assist Texas youth and students achieve their education, training and or employment goals.

31.     The services provided by the Texas VR program were administered, and or delivered by the Texas Department of Assistive and Rehabilitative Services (DARS). The Texas VR program was authorized and funded by various federal and state statutes, rules and regulations.

32.     The Texas VR program was a "Federal health care program" as defined in 42 United States Code § 1320a–7b (f). The Texas VR program was also a health care benefit program as defined in Title 18, United States Code, § 24(b).

33.     As of September 1, 2016, the Texas Legislature transferred the Texas VR program and services previously administered or delivered by DARS to the Texas Workforce Commission (TWC).

## THE KICKBACK SCHEME, CONSPIRACY, AND SCHEME TO DEFRAUD

34.     During the timeframe beginning on or about March 1, 2011, and continuing through on or about March 15, 2013, defendants **GLEN ELWOOD McKENZIE, JR.**, **WILLIAM JOSEPH DUBIN**, and **DAVID FOX DUBIN**, combined, confederated, agreed and conspired with each other, and with others known and unknown to the Grand Jury, to engage in the illegal payment and the illegal receipt of remuneration (kickbacks, bribes, or rebates). **GLEN ELWOOD McKENZIE, JR.** used his position at the emergency shelter house described in paragraph 10, and his connections at other entities and facilities such as those described to in paragraph 13, to refer children and youth to PARTS for various psychological services, including but not limited to, psychological testing. PARTS then billed Medicaid and the Texas VR

program for those services. In exchange for the referral of patients to PARTS, **WILLIAM JOSEPH DUBIN** (and later **DAVID FOX DUBIN**) caused PARTS to pay kickbacks to **GLEN ELWOOD McKENZIE, JR.** from money PARTS received from Medicaid and the Texas VR program in payment of the bills for psychological services allegedly provided to the referred children and youth.

35.     In or around June of 2012, **DAVID FOX DUBIN** joined the kickback scheme, and conspiracy described in paragraph 34, and thereafter remained a co-conspirator and active participant in said conspiracy and illegal enterprise through on or about March 15, 2013.

36.     Beginning on or about February 8, 2011, and continuing through on or about May 28, 2015, defendant **WILLIAM JOSEPH DUBIN** combined, confederated, agreed and conspired with persons known and unknown to the Grand Jury to engage in, and did engage in a scheme and artifice to defraud Medicaid by sending false and fraudulent bills to Medicaid.

37.     In or around June of 2012, **DAVID FOX DUBIN** joined the conspiracy and scheme to defraud described in paragraph 36, and thereafter remained a co-conspirator and active participant in said conspiracy and illegal enterprise through on or about May 28, 2015.

## OBJECTS, PURPOSES, MANNERS, MEANS, AND OVERT ACTS OF KICKBACK CONSPIRACY

38.     The objects and purposes of the defendants' fraudulent schemes, conspiracy to pay and receive illegal kickbacks, and illegal enterprises described in paragraphs 34 to 37, and in the crimes charged herein, was for defendants **GLEN ELWOOD McKENZIE, JR.**, **WILLIAM JOSEPH DUBIN**, and **DAVID FOX DUBIN**, to unlawfully enrich themselves and PARTS by illegally obtaining money from health care benefit programs, including the federal health care programs known as Medicaid and the Texas VR program.

39.     In furtherance of the fraudulent schemes, conspiracies, and illegal enterprises described in paragraphs 34 to 37, and the crimes charged herein, and as a manner and means of accomplishing and effecting the objects and purposes of said fraudulent schemes, conspiracies, and illegal enterprises, defendants **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN**, and **DAVID FOX DUBIN** committed, aided and abetted in the commission of, and caused others to commit numerous overt acts including, but not limited to, those described in the Counts 2 through 11 and 13 through 25, as well as one or more of the following:

a.     **GLEN ELWOOD McKENZIE, JR.** used his position at the emergency shelter house described in paragraph 10, and at the other entities and facilities described in paragraph 13, to refer children and youth to PARTS for comprehensive mental health assessments and testing, the bills for which would be paid by Medicaid.

b.     **GLEN ELWOOD McKENZIE, JR.** used his connections with DARS to refer children and youth to PARTS for comprehensive mental health assessments and testing, the bills for which would be paid by the Texas VR program administered or delivered by DARS.

c.     Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN**, and/or **DAVID FOX DUBIN** directed, or caused, LPAs and PLPs to conduct and administer psychological testing of the children and youth on behalf of PARTS.

d.     Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN**, and/or **DAVID FOX DUBIN** directed, or caused, unlicensed students and interns to conduct and administer psychological testing of the children and youth on behalf of PARTS.

e.     Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN**, and/or **DAVID FOX DUBIN** directed, or caused, psychological testing of the children and youth to be

conducted and administered on behalf of PARTS by persons who were not supervised as required by the Medicaid rules.

f.  Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** directed, or caused LPAs and PLPs at PARTS to provide other psychological services for the children and youth including, interpreting the test results and the preparation of psychological evaluation reports that contained the tester's diagnoses of the psychological condition of each child and youth, the tester's impression of the risk of each child and youth for future obstructive and disruptive behaviors, and the tester's recommendations for future treatment for each child and youth.

g.  Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** directed, or caused unlicensed students and interns at PARTS to provide other psychological services for the children and youth including interpreting the test results and the preparation of psychological evaluation reports that contained the tester's diagnoses of the psychological condition of each child and youth, the tester's impression of the risk of each child and youth for future obstructive and disruptive behaviors, and the tester's recommendations for future treatment for each child and youth.

h.  Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** directed unlicensed (and unsupervised) students and interns to make the clinical diagnoses of the children and youth tested. The students and interns were directed to have their diagnosis ready by the time the testing sessions were over and well before the student or intern had a chance to thoroughly review the testing and to complete an evaluation.

i.  Upon receipt of the referrals of children and youth from **GLEN ELWOOD McKENZIE, JR., DAVID FOX DUBIN** directed, or caused the persons who

were diagnosing the children and youth on behalf of PARTS to make certain diagnosis of the problems of the children and youth tested.

j.    **WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** sent bills, or caused bills to be sent, to Medicaid for psychological services provided, or allegedly provided by agents and employees of PARTS for the children and youth who were referred to PARTS by **GLEN ELWOOD McKENZIE, JR.**

k.    **WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** sent bills, or caused bills to be sent, to DARS for psychological services provided, or allegedly provided by agents and employees of PARTS for the children and youth who were referred to PARTS by **GLEN ELWOOD McKENZIE, JR.**

l.    **WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** prepared documents, or caused documents to be prepared for **GLEN ELWOOD McKENZIE, JR.**, and themselves, that accounted for the payments received by PARTS from Medicaid, DARS, and other entities, for the psychological services provided, or allegedly provided for the children and youth who were referred to PARTS by **GLEN ELWOOD McKENZIE, JR.**

m.    After PARTS received payments from Medicaid, DARS, and other entities for the psychological services allegedly provided for the children and youth referred to PARTS, **WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN** paid, or caused PARTS to pay, **GLEN ELWOOD McKENZIE, JR.** sums of money equal to ten percent (10%) of the amounts paid to PARTS by Medicaid, DARS and other entities for services provided, or allegedly provided to each child and youth, referred to PARTS by **GLEN ELWOOD McKENZIE, JR.**

n.    In furtherance of their conspiracy and scheme to defraud, **WILLIAM JOSEPH DUBIN** and **DAVID FOX DUBIN,** submitted, or caused others to submit, false and fraudulent bills, also known as claims, to Medicaid for psychological services, including testing, that were not provided as claimed, or which had been improperly provided. The bills were false and fraudulent in multiple respects

14

including but not limited to those described in Counts 13 through 19, as well as the following:

1. Bills were submitted to Medicaid, in violation of applicable Medicaid rules and regulations, for psychological testing administered by unlicensed students and interns.

2. Bills were submitted to Medicaid, in violation of applicable Medicaid rules and regulations, for psychological evaluations, which were not done, or were done by unlicensed students and interns.

3. Bills were submitted to Medicaid which used the Medicaid billing code modifier AH to falsely and fraudulently represent that psychological testing had been administered by a licensed psychologist when the person who administered the testing was not a licensed psychologist, and in fact was not even a psychologist.

4. Bills were submitted to Medicaid which used the Medicaid billing code modifier AH to falsely and fraudulently represent that psychological evaluations had been done by a licensed psychologist when the person who did the psychological evaluation was not a licensed psychologist, and in fact was not even a psychologist.

5. Bills were submitted to Medicaid, without modifiers, for psychological testing administered by unlicensed students and interns.

6. Bills were submitted to Medicaid, without modifiers, for psychological testing administered by LPAs and PLPs.

7. Bills were submitted to Medicaid in violation of applicable Medicaid rules and regulations, for psychological testing administered, or attempted, by students and interns who were not only unlicensed but who were also unsupervised.

8. Bills were submitted to Medicaid in violation of applicable Medicaid rules and regulations, for psychological testing administered by LPAs and PLPs who were unsupervised.

9. Bills were submitted to Medicaid which represented that psychological testing had been administered at a PARTS office (in

Austin) when in fact, the tests had not been administered at a PARTS office, but were administered at the emergency shelter house described in paragraph 10, or at other locations.

10. Bills were submitted to Medicaid and or to DARS for psychological services when the patient's condition was diagnosed by unlicensed and unsupervised students and interns.

11. Bills were submitted to Medicaid and or to DARS for psychological services when the patient's condition was diagnosed by unlicensed and unsupervised students and interns before they had a chance to thoroughly review their testing and complete an evaluation.

12. Bills were submitted to Medicaid and or to DARS by for psychological services which were provided, or allegedly provided, as a result of the referral of the patient to PARTS in return for the offer to pay, and the payment of, illegal remuneration (including any kickback, bribe, or rebate) to **GLEN ELWOOD McKENZIE, JR.**

o. For the purpose of executing their scheme to defraud and their conspiracy, **GLEN ELWOOD McKENZIE, JR., WILLIAM JOSEPH** and **DAVID FOX DUBIN,** transmitted, or cause to be transmitted, writings, signs, signals, pictures or sounds by means or wire, or radio, in interstate commerce.

p. In matters involving the health care benefit program known as Medicaid, and for the purpose of executing their scheme to defraud, and their conspiracy **WILLIAM JOSEPH DUBIN,** and **DAVID FOX DUBIN,** themselves, or through others acting at their direction, knowingly and willfully falsified, concealed, or covered up by trick, scheme, or device, material facts about the bills they sent to Medicaid, or caused others to send.

q. In matters involving the health care benefit program known as Medicaid, and for the purpose of executing their scheme to defraud, and their conspiracy **WILLIAM JOSEPH DUBIN,** and **DAVID FOX DUBIN,** themselves, or through others acting at their direction, knowingly and willfully made materially false, fictitious, and fraudulent statements or representations to Medicaid and

16

made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries.

r.     To cover up, conceal and hide the fact that the psychological testing billed to Medicaid had been administered at the emergency shelter house described in paragraph 10, **WILLIAM JOSEPH DUBIN** and **DAVID FOX DUBIN**, submitted, or caused others to submit bills to Medicaid that falsely and fraudulently claimed that psychological testing had been administered at the offices of PARTS.

s.     During and in relation to their conspiracy to defraud and the execution of their scheme to defraud Medicaid, or during the execution of their scheme to obtain Medicaid money or property by false or fraudulent pretenses, or representations, **WILLIAM JOSEPH DUBIN,** and **DAVID FOX DUBIN,** knowingly, and without lawful authority, transferred, possessed or used one or more means of identification of another person or other persons, namely the government issued Medicaid identification numbers of children and youth at the emergency shelter house described in paragraph 10, and at other entities and facilities described in paragraph 13.

## COUNT 1

## CONSPIRACY TO PAY AND RECEIVE HEALTH CARE KICKBACKS
Title 18, United States Code, § 371

40.    The Grand Jury incorporates by reference paragraphs 1 through 39 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

41.    During the timeframe beginning on or about March 1, 2011, and continuing through on or about March 15, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants,

**GLEN ELWOOD MCKENZIE, JR,
WILLIAM JOSEPH DUBIN, and
DAVID FOX DUBIN**

in violation of Title 18, United States Code, § 371, combined, confederated, agreed, and conspired with each other and with others, known and unknown to the Grand Jury, to engage in a federal health care offense, or series of federal health care offenses, as defined in Title 18, United States Code, § 24(a)(1), against the United States in violation of 42 USC § 1320a–7b (b)(1) and (2), namely the illegal payment and illegal receipt of remuneration (kickbacks, bribes, or rebates) directly or indirectly, overtly or covertly, in cash or in kind in return for referring individuals to PARTS for the furnishing or arranging for the furnishing of psychological services for which payment was or would be made in whole or in part under a Federal health care program.

42.     The objects and purposes of the conspiracy, the manner and means thereof, and some, but not necessarily all, of the overt acts done in furtherance of, and to effect the objects and purposes of the conspiracy are set out in and in paragraphs 38 and 39 above (and the subparagraphs thereof).

## COUNTS 2 - 6
### SOLICITING AND RECEIVING
### ILLEGAL REMUNERATION (KICKBACKS)
Title 42, United States Code, § 1320a-7b (b)(1)

43.     The Grand Jury incorporates by reference paragraphs 1 through 39 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

44.     During the timeframe beginning on or about March 1, 2011, and continuing through on or about March 15, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendant,

### GLEN ELWOOD McKENZIE, JR.

in violation of Title 42, United States Code, § 1320a-7b(b)(1), knowingly and willfully, solicited and received remuneration, (kickbacks, bribes, or rebates) in cash or check, directly and

indirectly, overtly and covertly, from **WILLIAM JOSEPH DUBIN**, and/or **DAVID FOX DUBIN**, or their agents and employees at the business known as PARTS in return for referring children and youth to defendants **WILLIAM JOSEPH DUBIN**, and/or **DAVID FOX DUBIN**, or their agents and employees at the business known as PARTS for the furnishing, or arranging for the furnishing of psychological services, items and services for which payment would be made in whole or in part under the federal health care programs known Medicaid, and the Texas VR program, including, but not limited to the following:

| Count | Individual referred to PARTS by Glen McKenzie | Date services billed by PARTS (on or about) | Approximate Medicaid payment to PARTS and payment date (on or about) | Amount of PARTS kickback payment to Glen McKenzie | Date of PARTS kickback payment to Glen McKenzie (on or about) and PARTS check Number |
|---|---|---|---|---|---|
| 2 | Patient A | 09-21-12 | $570.37<br><br>09-25-12 | $57.04 | 11-02-12<br><br>Included in PARTS check 12920 |
| 3 | Patient B | 09-28-12 | $570.37<br><br>10-19-12 | $57.04 | 10-01-12<br><br>Included in PARTS check 12866 |
| 4 | Patient C | 06-25-12 | $570.41<br><br>06-29-12 | $57.04 | 07-03-12<br><br>Included in PARTS check 12735 |
| 5 | Patient D | 06-14-12 | $570.41<br><br>06-19-12 | $57.04 | 07-03-12<br><br>Included in PARTS check 12735 |

| Count | Individual referred to PARTS by Glen McKenzie | Date services billed by PARTS (on or about) | Approximate Medicaid payment to PARTS and payment date (on or about) | Amount of PARTS kickback payment to Glen McKenzie | Date of PARTS kickback payment to Glen McKenzie (on or about) and PARTS check Number |
|---|---|---|---|---|---|
| 6 | Patient E | 06-06-12 | $570.41 06-12-12 | $57.04 | 07-03-12 Included in PARTS check 12735 |

All in violation of Title 42, United States Code, § 1320a-7b (b)(1).

## COUNTS 7 - 11

## OFFERING TO PAY AND PAYING ILLEGAL REMUNERATION (KICKBACKS)
Title 42, United States Code, § 1320a-7b(b)(2)

45    The Grand Jury incorporates by reference paragraphs 1 through 38 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

46.    During the timeframe beginning on or about March 1, 2011, and continuing through on or about March 15, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants,

## WILLIAM JOSEPH DUBIN,
## and DAVID FOX DUBIN

in violation of Title 42, United States Code, § 1320a-7b(b)(2), knowingly and willfully offered to pay, and did pay, **GLEN ELWOOD McKENZIE, JR**. remuneration, (kickbacks, bribes, or rebates) in cash or check, directly and indirectly, overtly and covertly, in return for referring children and youth to defendants **WILLIAM JOSEPH DUBIN,** and/or **DAVID FOX DUBIN,** or their agents and employees at the business known as PARTS for the furnishing, or arranging for the furnishing of psychological services, items and services for which payment would be made in whole or in part under the federal health care programs known Medicaid, and the Texas VR program, including, but not limited to the following::

20

| Count | Individual referred to PARTS by Glen McKenzie | Date services billed by PARTS (on or about) | Approximate Medicaid payment to PARTS and payment date (on or about) | Amount of PARTS kickback payment to Glen McKenzie | Date of PARTS kickback payment to Glen McKenzie (on or about) and PARTS check Number |
|---|---|---|---|---|---|
| 7 | Patient A | 09-21-12 | $570.37<br><br>09-25-12 | $57.04 | 11-02-12<br><br>Included in PARTS check 12920 |
| 8 | Patient B | 09-28-12 | $570.37<br><br>10-19-12 | $57.04 | 10-01-12<br><br>Included in PARTS check 12866 |
| 9 | Patient C | 06-25-12 | $570.41<br><br>06-29-12 | $57.04 | 07-03-12<br><br>Included in PARTS check 12735 |
| 10 | Patient D | 06-14-12 | $570.41<br><br>06-19-12 | $57.04 | 07-03-12<br><br>Included in PARTS check 12735 |
| 11 | Patient E | 06-06-12 | $570.41<br><br>06-12-12 | $57.04 | 07-03-12<br><br>Included in PARTS check 12735 |

All in violation of Title 42, United States Code, § 1320a-7b (b)(2).

## COUNT 12

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
(Title 18, United States Code, § 1349)

47.     The Grand Jury incorporates by reference paragraphs 1 through 38 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

48.     During the timeframe beginning on or about February 8, 2011, and continuing through on or about May 28, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants,

**WILLIAM JOSEPH DUBIN, and**
**DAVID FOX DUBIN**

in violation of Title 18, United States Code, § 1349, combined, conspired, confederated and agreed with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, § 1347, namely, to execute a scheme and artifice to defraud the Texas Medicaid Program, a health care benefit program as defined in Title 18, United States Code, § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the control of said health care benefit program in connection with the delivery of and payment for health care benefits, items and services.

49.     The objects and purposes of the conspiracy, the manner and means thereof, are set out in and in paragraphs 37 and 38 above (and the subparagraphs thereof).

### COUNTS 13 - 19

### HEALTH CARE FRAUD and AIDING AND ABETTING
Title 18, United States Code, § 1347 and Title 18, United States Code, § 2

50.     The Grand Jury incorporates by reference paragraphs 1 through 38 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

51.     During the timeframe beginning in or around January, 2011, and continuing through in or about June, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants,

**WILLIAM JOSEPH DUBIN, and**
**DAVID FOX DUBIN**

22

in violation of Title 18, United States Code § 1347, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program, namely the Texas Medicaid program; or to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by or under the custody and control of a health care benefit program defined in Title 18, United States Code, § 24(b), namely the Texas Medicaid program. Said conduct was in connection with the delivery of or payment for health care benefits, items, or services. As part of the execution of the scheme to defraud, and to obtain, money or property owned by, or under the custody or control of, the Texas Medicaid program by means of false or fraudulent pretenses, representations, or promises, **WILLIAM JOSEPH DUBIN**, and **DAVID FOX DUBIN** individually, and by aiding and abetting each other and others, submitted, or caused others to submit false and fraudulent claims to Medicaid for psychological testing and other psychological services, including but not limited to the following:

| Count | Patient | Claimed service dates | Date billed (on or about) | Amount billed | Name of person who administered psychological tests | Texas license of tester | Fraudulently billed as if the services had been provided by |
|-------|---------|------------------------|----------------------------|----------------|------------------------------------------------------|--------------------------|--------------------------------------------------------------|
| 13 | Patient F | 06-22-12 | 07-10-12 | $720.00 | Tester A | NONE | Licensed Psychologist |
| 14 | Patient G | 06-22-12 | 07-10-12 | $720.00 | Tester A | NONE | Licensed Psychologist |
| 15 | Patient H | 06-22-12 | 07-10-12 | $720.00 | Tester A | NONE | Licensed Psychologist |
| 16 | Patient G | 07-25-12 | 08-08-12 | $720.00 | Tester B | PLP | Licensed Psychologist |
| 17 | Patient I | 01-21-13 | 01-22-13 | $540.00 | Tester C | LPA | Licensed Psychologist |

| Count | Patient name | Claimed service dates | Date billed (on or about) | Amount billed | Name of person who administered psychological tests | Texas license of tester | Fraudulently billed as if the services had been provided by |
|-------|-------------|----------------------|---------------------------|---------------|-----------------------------------------------------|------------------------|------------------------------------------------------------|
| 18 | Patient J | 06-08-13 | 06-12-13 | $720.00 | Tester D | LPA | Licensed Psychologist |
| 19 | Patient K | 05-08-13 | 06-17-13 | $540.00 | Tester D | LPA | Licensed Psychologist |

All in violation of Title 18, United States Code, § 1347, and Title 18, United States Code, § 2.

## COUNTS 20 - 25

### AGGRAVATED IDENTITY THEFT
### and AIDING AND ABETTING
Title 18, United States Code, § 1028A and Title 18, United States Code, § 2

52.    The Grand Jury incorporates by reference paragraphs 1 through 38 (and the subparagraphs thereof) set out above as though fully restated and re-alleged herein.

53.    On or about the dates set out in the chart below relative to each count, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendants,

### WILLIAM JOSEPH DUBIN,
### and DAVID FOX DUBIN

aided and abetted by each other, and aiding and abetting others, did knowingly, without lawful authority, and in violation of Title 18, United States Code, § 1028A(a)(1), use, or cause others acting for them, to use, one of more means of identification of another person, namely, the unique government Medicaid identification number issued to Medicaid recipients, as well as their names. The defendants unlawful use of the means of identification was done during and in relation to the crimes of conspiracy to commit health care fraud in violation of Title 18, United States Code, § 1349 and the crimes of health care fraud in violation of Title 18, United States Code, § 1347. Defendants illegally and in violation of Title 18, United States Code, §

24

1028A(a)(1) used one or more means of identification of numerous Medicaid recipients

including, but not limited to, the Medicaid recipients set out below.

| Count | Person whose means of identification was illegally used | Means of identification used | Means of identification used on, and date of use (on or about) | Fraudulent service billed to Medicaid | Name and Texas license of person who administered psychological tests |
|---|---|---|---|---|---|
| 20 | Patient F | Patient F's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 07-10-12 | Psychological Testing | Tester A No Texas license |
| 21 | Patient G | Patient G's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 07-10-12 | Psychological Testing | Tester A No Texas license |
| 22 | Patient H | Patient H's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 07-10-12 | Psychological Testing | Tester A No Texas license |
| 23 | Patient I | Patient I's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 01-22-13 | Psychological Testing | Tester C LPA |
| 24 | Patient J | Patient J's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 06-12-13 | Psychological Testing | Tester D LPA |
| 25 | Patient K | Patient K's name and assigned Medicaid identification number | Fraudulent billing sent to Medicaid 06-17-13 | Psychological Testing | Tester D LPA |

All in violation of Title 18, United States Code, § 1028A and Title 18, United States Code, § 2.

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE

### I. Forfeiture Statute for Health Care Fraud
[18 U.S.C. § 982(a)(7)]

As a result of the criminal violations set forth in Counts One through Nineteen, the United States gives notice that it intends to forfeit, but is not limited to, the below-listed property from Defendants **WILLIAM JOSEPH DUBIN, DAVID FOX DUBIN**, and **GLEN ELWOOD McKENZIE, JR.** Defendants shall forfeit all right, title, and interest in said property to the United States pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 982(a)(7), which states:

> **18 U.S.C. § 982.  Criminal Forfeiture**
> (a)(7)  The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

### II. Forfeiture Statute for Fraud Conspiracy
[18 U.S.C. § 981(a)(1)(C)]

As a result of the criminal violation set forth in Count Twelve, the United States gives notice that it intends to forfeit, but is not limited to, the below-listed property from Defendants **WILLIAM JOSEPH DUBIN, DAVID FOX DUBIN**, and **GLEN ELWOOD McKENZIE, JR.** Defendants shall forfeit all right, title, and interest in said property to the United States pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 981(a)(1)(C), which is made applicable to criminal forfeiture by 28 U.S.C. § 2461(c). Section 981 provides:

> **18 U.S.C. § 981.  Civil Forfeiture**
> (a)(1)  The following property is subject to forfeiture to the United States:
> \* \* \*
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## III.  **Subject Property**

This Notice of Demand for Forfeiture includes, but is not limited, to the following:

**Money Judgment:**
A sum of money that represents the amount of proceeds that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses for which the Defendants are convicted.

**Substitute Assets:**
If any of the properties described above, as a result of any act or omission of Defendants:

    a.  cannot be located upon the exercise of due diligence;
    b.  has been transferred or sold to, or deposited with, a third person;
    c.  has been placed beyond the jurisdiction of the Court;
    d.  has been substantially diminished in value; or
    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property owned by

Defendants up to the value of said Money Judgment as substitute assets, pursuant to FED. R.

CRIM. P. 32.2 and 21 U.S.C. § 853(p).

A TRUE BILL:

SIGNATURE REDACTED PURSUANT
TO E-GOVERNMENT ACT OF 2002

FOREPERSON

RICHARD L. DURBIN Jr.
UNITED STATES ATTORNEY

By: _____
REX G. BEASLEY
Special Assistant United States Attorney

27